## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

---

| | |
|---|---|
| ANCESTRY.COM OPERATIONS INC., ANCESTRY.COM DNA, LLC, | : :  :  |
| Plaintiffs, | : : Civil Action No. 1:15-cv-00737-SSB-SKB |
| v. | : : Judge Sandra S. Beckwith |
| DNA DIAGNOSTIC CENTER, INC., | : : Magistrate Judge Stephanie K. Bowman |
| Defendant. | : |

---

### PLAINTIFFS' MOTION TO DISMISS COUNTS IV AND VII OF DEFENDANT'S COUNTERCLAIMS

Plaintiffs Ancestry.com Operations Inc. and Ancestry.com DNA, LLC (collectively, "Ancestry"), move this Court pursuant to Fed. R. Civ. P. 12(b)(6) for entry of an order granting Ancestry's motion to dismiss Counts IV and VII of Defendant DNA Diagnostic Center, Inc.'s ("DDC") Counterclaims. This motion is supported by the accompanying memorandum of law.

WHEREFORE, Plaintiffs respectfully request that their motion be granted.

                              Respectfully submitted,

Dated: February 12, 2016          By: /s/ *Alexis Arena*_____
                                       Jordan A. LaVine, Esq. (admitted *pro hac vice*)
                                       Alexis K. Arena, Esq. (admitted *pro hac vice*)
                                       FLASTER/GREENBERG P.C.
                                       1600 John F. Kennedy Blvd., Suite 200
                                       Philadelphia, PA 19103

                                       Paul Linden, Esq.
                                       Wood, Herron & Evans, L.L.C.
                                       2700 Carew Tower
                                       441 Vine Street
                                       Cincinnati, OH 45202-2917
                                       *Attorneys for Plaintiffs Ancestry.com Operations*
                                       *Inc. and Ancestry.com DNA, LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

---

| | |
|---|---|
| ANCESTRY.COM OPERATIONS INC., ANCESTRY.COM DNA, LLC, | : : : |
| Plaintiffs, | : : |
| v. | : Civil Action No. 1:15-cv-00737-SSB-SKB : : |
| DNA DIAGNOSTIC CENTER, INC., | : : |
| Defendant. | : |

---

_____

# MEMORANDUM OF LAW IN SUPPORT
# OF PLAINTIFFS' MOTION TO DISMISS COUNTS IV
# AND VII OF DEFENDANT'S COUNTERCLAIMS
_____


Respectfully submitted,

By: */s/Alexis Arena*
Jordan A. LaVine, Esq. (admitted *pro hac vice*)
Alexis Arena, Esq. (admitted *pro hac vice*)
FLASTER/GREENBERG P.C.
1600 John F. Kennedy Blvd., Suite 200
Philadelphia, PA  19103

and

Paul Linden, Esq.
Wood, Herron & Evans, L.L.C.
2700 Carew Tower
441 Vine Street
Cincinnati, OH 45202-2917

*Attorneys for Plaintiffs Ancestry.com Operations Inc. and Ancestry.com DNA, LLC*

Dated:  February 12, 2016

5492057 v4

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................................... iii

I.    INTRODUCTION .............................................................................................................. 1

II.    SUMMARY OF RELEVANT FACTUAL ALLEGATIONS IN DDC'S COUNTERCLAIMS ........................................................................................................... 2

    A.    DDC'S FRIVOLOUS CLAIM FOR MALICIOUS LITIGATION VIA UNFAIR COMPETITION ........................................................................................ 2

    B.    DDC'S FRIVOLOUS CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS ................................................................. 2

III.    LEGAL ARGUMENT ........................................................................................................ 3

    A.    THE NOERR PENNINGTON DOCTRINE ........................................................... 3

    B.    THE COURT SHOULD DISMISS COUNT IV OF DDC'S COUNTERCLAIMS FOR UNFAIR COMPETITION VIA MALICIOUS LITIGATION BECAUSE ANCESTRY IS IMMUNE FROM THE CLAIM UNDER THE NOERR-PENNINGTON DOCTRINE. ........................... 5

        1.    Ancestry's Claims Are Not Objectively Baseless ..................................... 6

        2.    DDC's Counterclaims Cannot Establish that Ancestry's Subjective Intent in Filing the Lawsuit Was to Injure DDC's Ability to Be Competitive ..................... 8

    C.    THE COURT SHOULD DISMISS COUNT VII OF DDC'S COUNTERCLAIMS FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS BECAUSE ANCESTRY IS IMMUNE FROM THE CLAIM UNDER THE NOERR-PENNINGTON DOCTRINE. ........................................................................................................ 8

IV.    CONCLUSION ................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*All Metal Sales, Inc. v. All Metal Source, LLC*,
  No. 1:10 CV 2343, 2011 WL 867020 (N.D. Ohio Mar. 11, 2011)...................5, 7, 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................3, 8, 11

*Chest Hill Co. v. Guttman*,
  No. C-1-79-240, 1981 WL 2160 (S.D. Ohio May 29, 1981)................................6

*DirecTV, Inc. v. Zink*,
  286 F. Supp. 2d 873 (E.D. Mich. 2003)...............................................................5

*E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961)..............................................................................................3

*Ferron v. Metareward, Inc.*,
  698 F. Supp. 2d 992 (S.D. Ohio 2010) ................................................................3

*GoldToeMoretz, LLC v. Implus Footcare, LLC*,
  No. No. 5:09–CV–0072 2010 WL 3474792 (W.D.N.C. Aug. 31, 2010) .................4

*MSC.Software Corp. v. Altair Eng'g, Inc.*,
  No. 07-12807, 2009 WL 2923075 (E.D. Mich. Sept. 10, 2009)..........................6

*Pennwalt Corp. v. Zenith Labs., Inc.*,
  472 F. Supp. 413 (E.D. Mich. 1979)............................................................ passim

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*,
  508 U.S. 49 (1993)......................................................................................4, 5, 7, 8

*Select Comfort Corp. v. Sleep Better Store, LLC*,
  838 F. Supp. 2d 889 (D. Minn. 2012).........................................................4, 9, 10

*Sweet St. Deserts, Inc. v. Chudleigh's Ltd.*,
  No. CIV.A. 12-3363, 2013 WL 1389760 (E.D. Pa. Apr. 4, 2013) .........................10

*VIBO Corp., Inc. v. Conway*,
  669 F.3d 675 (6th Cir. 2012) .................................................................................4

**STATE CASES**

*Am. Chem. Soc. v. Leadscope, Inc.*,
    978 N.E.2d 832 (Ohio 2012) ..................................................................................................5

*Wagner-Smith Co. v. Ruscilli Constr. Co.*, 139 Ohio Misc. 2d 101, 107, 861
    N.E.2d 612, 617-18 (2006) ..................................................................................................11

**RULES**

Fed. R. Civ. P. 12(b)(6)............................................................................................ passim

**CONSTITUTIONAL PROVISIONS**

First Amendment ....................................................................................................... passim

I.  **INTRODUCTION**

Plaintiffs Ancestry.com Operations, Inc. and Ancestry.com DNA, LLC (collectively "Ancestry") move to dismiss Counts IV and VII of Defendant, DNA Diagnostic Center, LLC's ("Defendant" or "DDC") Counterclaims. DDC's meritless claims for Unfair Competition via Malicious Litigation and Tortious Interference with Business Relationships are barred by the *Noerr-Pennington* Doctrine, which immunizes Ancestry's First Amendment right to seek redress from wrongs through the judicial process. The First Amendment to the United States Constitution provides that Congress shall make no law abridging the right "to petition the Government for a redress of grievances" (U.S. Const. Amend. I), but DDC's counterclaims ask the Court to impose tort liability on Ancestry for filing suit and for sending a "trademark infringement claim" to a third party to protect Ancestry's legal interests. As set forth below, courts have dismissed nearly identical claims on the basis of the *Noerr-Pennington* Doctrine at the pleadings stage.

DDC's attempts to avoid the *Noerr-Pennington* Doctrine by merely alleging a legal conclusion that is unsupported by factual allegations. DDC alleges that Ancestry's lawsuit is "objectively baseless" and therefore unprotected by the First Amendment. The Court cannot simply accept this legal conclusion as true in ruling on Ancestry's motion to dismiss.

With respect to DDC's tortious interference claim, DDC fails to even allege that Ancestry acted without privilege when Ancestry provided notice to Groupon of a prospective trademark infringement claim, and DDC's claim cannot survive because Ancestry's actions were privileged and immunized. Courts have also held that sending such a notice to a third party vendor with potential legal liability is an activity immunized by the *Noerr-Pennington* Doctrine. For the reasons set forth more fully below, Ancestry respectfully requests that the Court dismiss Counts IV and VII of DDC's Counterclaims, pursuant to Fed. R. Civ. P. 12(b)(6).

5492057 v4

## II. SUMMARY OF RELEVANT FACTUAL ALLEGATIONS IN DDC'S COUNTERCLAIMS

### A. DDC'S FRIVOLOUS CLAIM FOR MALICIOUS LITIGATION VIA UNFAIR COMPETITION

DDC alleges the following with respect to its theory of malicious litigation via unfair competition. In November 2015, Ancestry filed a lawsuit against DDC for trademark infringement. *See* Defendant's Counterclaims [Doc. 31] at 22, ¶ 40. DDC alleges that Ancestry's claims against DDC are "objectively baseless" for two reasons: (1) DDC's **ANCESTRYBYDNA** mark predates Ancestry's **ANCESTRYDNA** mark by 10 years, and accordingly, it is Ancestry's mark that infringes DDC's trademark rights; and (2) DDC's **ANCESTRYBYDNA** mark does infringe Ancestry's rights in its **ANCESTRYDNA** mark because there is no likelihood of confusion since the two marks co-existed from 2001 to 2012 without any reported confusion. *Id.* at 23, ¶ 41. DDC also alleges that Ancestry filed the lawsuit to create the public appearance that DDC is to blame for the confusion with the bad faith intent of damaging DDC's reputation, goodwill, and business. *Id.* at 23, ¶ 42.

### B. DDC'S FRIVOLOUS CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

DDC alleges the following with respect to its theory of tortious interference with business relationships. Shortly after filing its complaint in this matter, Ancestry submitted a "claim of trademark infringement" to Groupon because Ancestry believed that Groupon's advertisement and sale of DDC's **ANCESTRYBYDNA** test was infringing Ancestry's trademark. *Id.* at 23, ¶ 43, 27, ¶ 72. The submission of the complaint allegedly caused Groupon to cease offering deals for DDC's **ANCESTRYBYDNA** test and a loss of revenue for DDC. *Id.*

2

### III. LEGAL ARGUMENT

A district court must dismiss a cause of action that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court "must construe the pleading in favor of the party asserting a claim, accept the factual allegations contained in that party's pleading as true, and determine whether the factual allegations present a plausible claim." *Ferron v. Metareward, Inc.*, 698 F. Supp. 2d 992, 996 (S.D. Ohio 2010). It is not enough that a party offers legal conclusions or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, a party must plead facts that would be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). The plausibility standard requires "more than a sheer possibility that a [party] has acted unlawfully." *Iqbal*, 556 U.S. at 678. Accordingly, when a party fails to plead a claim for relief that is plausible on its face, the cause of action must be dismissed.

### A. THE NOERR PENNINGTON DOCTRINE

The constitutional right to seek redress from wrong in the courts has its genesis in the First Amendment and is known as the *Noerr-Pennington* Doctrine. *See Pennwalt Corp. v. Zenith Labs., Inc.*, 472 F. Supp. 413, 424 (E.D. Mich. 1979) (citing *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961)). Under the doctrine, a party's judicial activity is immunized from liability even if the activity eliminates competition, unless the activity is "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Noerr*, 365 U.S. at 144.

The Supreme Court of the United States outlined a two-part definition of what constitutes "sham" litigation: (1) objectively baseless litigation; and (2) the litigant's subjective intent to interfere. *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993).  First, the court examines whether the lawsuit is "objectively baseless in the sense that no reasonable litigant could reasonably expect success on the merits." *Id.*  Only if the court finds that the lawsuit is objectively baseless, may the court continue to examine subjective intent. *Id.* If both elements are not met, the suit is not a "sham" and therefore immunized under the *Noerr-Pennington* Doctrine. *Id.*

Courts have dismissed counterclaims similar to DDC's at the pleadings stage, without the benefit of discovery, because even assuming that the allegations pleaded are true, the counterclaimant still cannot demonstrate as a matter of law that the plaintiff's claims are so "objectively baseless" as to lose constitutional immunity. *See, e.g.*, *VIBO Corp., Inc. v. Conway*, 669 F.3d 675 (6th Cir. 2012) (Affirming Rule 12(b)(6) dismissal of claims pursuant to *Noerr-Pennington* Doctrine); *GoldToeMoretz, LLC v. Implus Footcare, LLC,* No. No. 5:09–CV–0072 2010 WL 3474792 (W.D.N.C. Aug. 31, 2010) (Dismissing counterclaim at pleadings stage because plaintiff's trademark infringement complaint appeared to be objectively reasonable); *Select Comfort Corp. v. Sleep Better Store, LLC*, 838 F. Supp. 2d 889, 896-97 (D. Minn. 2012) (Same result with respect to tortious interference counterclaim).  Even assuming that DDC's factual allegations are true, DDC still has not alleged a single fact that supports the legal conclusion that Ancestry's legal actions are not immunized.  Therefore, both counterclaims are barred by the *Noerr-Pennington* Doctrine and should be dismissed.

      B.    <u>THE COURT SHOULD DISMISS COUNT IV OF DDC'S COUNTERCLAIMS FOR UNFAIR COMPETITION VIA MALICIOUS LITIGATION BECAUSE ANCESTRY IS IMMUNE FROM THE CLAIM UNDER THE NOERR-PENNINGTON DOCTRINE.</u>

In Ohio, a common law claim for unfair competition via malicious litigation is barred by the *Noerr-Pennington* Doctrine and First Amendment principles unless it falls under the sham litigation exception – meaning that the claim is both objectively baseless and the litigant "had the subjective intent to injure the opposing party's ability to be competitive." *See Am. Chem. Soc. v. Leadscope, Inc.*, 978 N.E.2d 832, 843 (Ohio 2012); *see also All Metal Sales, Inc. v. All Metal Source, LLC*, No. 1:10 CV 2343, 2011 WL 867020, at *2 (N.D. Ohio Mar. 11, 2011) ("It is clear that any unfair competition claim arising from malicious litigation… must also fall within the exception to *Noerr–Pennington* immunity in order to be a recognized and enforceable cause of action). The *Noerr-Pennington* Doctrine evolved out of antitrust claims and district courts in the Sixth Circuit have held that the First Amendment rights that it also applies to other types of claims such as torts, trademark infringement, and abuse of process. *See Pennwalt Corp. v. Zenith Labs., Inc.*, 472 F. Supp. 413, 424 (E.D. Mich. 1979) (extending *Noerr-Pennington* to cover torts, trademark infringement, and abuse of process based on First Amendment rights); *see also DirecTV, Inc. v. Zink*, 286 F. Supp. 2d 873, 875 (E.D. Mich. 2003) ("The Noerr–Pennington doctrine draws explicitly on jurisprudence for the common-law tort of wrongful civil proceedings, which is focused on the instigation of unreasonable proceedings.").

DDC bears the burden of proving that Ancestry's lawsuit is a "sham" and that Ancestry is not entitled to *Noerr-Pennington* immunity. *Prof'l Real Estate Inv'rs, Inc.*, 508 U.S. at 60. DDC alleges unfair competition via malicious litigation against Ancestry and DDC alleges that it is the filing of the lawsuit itself that gives rise to DDC's counterclaim. Ancestry is immune from this claim under the *Noerr-Pennington* Doctrine because (1) DDC cannot prove that Ancestry's

trademark infringement lawsuit against DDC is objectively baseless; and (2) DDC cannot prove that Ancestry's subjective intent in filing the lawsuit was to injure DDC's ability to be competitive. Under Ohio law, it is therefore proper for this Court to dismiss this claim at the pleadings stage. *See, e.g., All Metal Sales, Inc.*, 2011 WL 867020, at *2 (dismissing defendant's counterclaim for unfair competition via malicious litigation because plaintiff's claims were not objectively baseless); *see also Pennwalt Corp.*, 472 F. Supp. at 424 (E.D. Mich. 1979) (dismissing defendants' counterclaims on *Noerr-Pennington* grounds).

### 1. Ancestry's Trademark Claims Are Not Objectively Baseless

Based on the allegations in DDC's Counterclaims, DDC cannot prove that Ancestry's trademark infringement lawsuit is objectively baseless. First, DDC's argument that Ancestry's claims are objectively baseless is undermined by the fact that DDC did not move to dismiss any of Ancestry's claims. Seemingly, a claim that is objectively baseless would constitute a claim upon which relief cannot be granted, and therefore, could be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). It is telling that DDC did not seek to have any of Ancestry's claims dismissed, but instead, filed a counterclaim alleging malicious litigation.

Second, DDC cannot carry its burden of proving as a matter of law that Ancestry's claims are objectively baseless. The "sham" exception to the *Noerr-Pennington* Doctrine that DDC seeks to apply is narrowly construed. *Chest Hill Co. v. Guttman*, No. C-1-79-240, 1981 WL 2160, at *15 (S.D. Ohio May 29, 1981). DDC does not meet its burden by simply including the legal conclusion that Ancestry's lawsuit is "objectively baseless." *See, e.g., MSC.Software Corp. v. Altair Eng'g, Inc.,* No. 07-12807, 2009 WL 2923075, at *1 (E.D. Mich. Sept. 10, 2009) (To survive a motion to dismiss and avoid *Noerr–Pennington* immunity, a counterclaimant must do more than assert a general allegation that the lawsuit is objectively baseless) (*citing Raines v. Switch Mfg.,* 1997 WL 578547 at *6 (N.D.Cal. July 28, 1997) ("if a bare allegation of bad faith

6

litigation were sufficient to defeat the *Noerr–Pennington* bar, every claimant would be able to avoid the intent of the Supreme Court merely by alleging bad faith…").

DDC proffers two theories to establish that the lawsuit is objectively baseless: (1) DDC's **ANCESTRYBYDNA** mark predates Ancestry's **ANCESTRYDNA** mark by 10 years, and accordingly, it is Ancestry's mark that infringes DDC's trademark rights; and (2) DDC's **ANCESTRYBYDNA** mark does infringe Ancestry's rights in its **ANCESTRYDNA** mark because there is no likelihood of confusion since the two marks co-existed from 2001 to 2012 without any reported confusion. These allegations do not establish that Ancestry's trademark infringement lawsuit is objectively baseless because even accepting these allegations as true and drawing all reasonable inferences in favor of DDC, at best, there is a dispute as to liability.

Based on the pleadings, Ancestry had probable cause to initiate the instant action. *See Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 62 (finding the existence of probable cause to institute legal proceedings precludes a finding of sham litigation). DDC's own Counterclaims acknowledge that Ancestry has been selling genealogical goods and services with a collection of billions of historical records that have been digitized, indexed, and put on its website since as early as 1998. The exhibits that are attached to Ancestry's Amended Complaint establish its family of marks dating back to 1990, years of correspondence detailing disputes over the **ANCESTRYDNA** and **ANCESTRYBYDNA** products, and dozens of examples of consumer confusion resulting from the similarity of the two marks. Ancestry's Complaint sets forth a plausible claim for relief, and DDC does not offer any factual allegations that support a conclusion that Ancestry's claims are objectively baseless. Thus, under Ohio law, it is proper for this Court to dismiss DDC's Count IV for malicious litigation via unfair

7

competition at the pleadings stage pursuant to Fed. R. Civ. P. 12(b)(6). *See All Metal Sales, Inc.*, 2011 WL 867020, at *2; *see also Pennwalt Corp.*, 472 F. Supp. at 424.

> 2. DDC's Counterclaims Cannot Establish that Ancestry's Subjective Intent in Filing the Lawsuit Was to Injure DDC's Ability to Be Competitive

Since Ancestry's claims are not objectively baseless, the Court does not need to consider Ancestry's subjective intent. *Prof'l Real Estate Inv'rs, Inc.*, 508 U.S. at 60. However, assuming *arguendo* that DDC could establish that Ancestry's claims are objectively baseless, DDC failed to plead sufficient allegations to prove Ancestry's bad faith subjective intent in filing the lawsuit. DDC alleges that Ancestry filed the lawsuit to create the public appearance that DDC is to blame for the confusion with the bad faith intent of damaging DDC's reputation, goodwill, and business. *Id.* at 23, ¶ 42. However, no factual allegation supports this conclusion, which is nothing more than a legal conclusion couched as a factual allegation. The Court must disregard mere legal conclusions that are nothing more than a threadbare recital of the elements of a cause of action. *Twombly*, 550 U.S. at 555. Accordingly, DDC did not sufficiently plead Ancestry's bad faith subjective intent, and Count IV of DDC's Counterclaims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

> C. THE COURT SHOULD DISMISS COUNT VII OF DDC'S COUNTERCLAIMS FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS BECAUSE ANCESTRY IS IMMUNE FROM THE CLAIM UNDER THE NOERR-PENNINGTON DOCTRINE.

Count VII of DDC's Counterclaims for Tortious Interference with Business Relationships is barred by the *Noerr-Pennington* Doctrine. The crux of DDC's claim is that Ancestry sent a "claim of trademark infringement" to Groupon, while this lawsuit was pending, which put Groupon on notice of Ancestry's prospective trademark infringement claim, and allegedly caused Groupon to cease offering DDC's **ANCESTRYBYDNA** product. Counterclaims, ¶ 42. DDC further alleges that Groupon is a former vendor of DDC's **ANCESTRYBYDNA** product. *Id.*

8

Vendors who profit from a party's trademark infringement may expose themselves to legal liability for contributory trademark infringement and are potential additional defendants. Although DDC did not cease its conduct in response to Ancestry's cease and desist letters, Groupon allegedly ceased its activities in response to a "claim of trademark infringement" made by Ancestry shortly after this lawsuit was filed.

DDC's tortious interference claim is similar to claims alleging that a party interfered by sending a prospective defendant a pre-suit demand letter. District Courts in the Sixth Circuit have held that pre-suit demand letters are entitled to *Noerr-Pennington* immunity. *See Pennwalt Corp. v. Zenith Labs., Inc.*, 472 F. Supp. 413, 424 (E.D. Mich. 1979) (extending Noerr-Pennington Doctrine to cover threats of lawsuit). Additionally, six of the seven other circuits to address this issue have held that pre-suit demand letters are covered by the *Noerr-Penninton* Doctrine as long as the letters are not a "sham." *See Select Comfort Corp. v. Sleep Better Store, LLC*, 838 F. Supp. 2d 889, 896-97 (D. Minn. 2012) (citing *Sosa v. DIRECTV, Inc.,* 437 F.3d 923, 935 (9th Cir.2006); *Primetime 24 Joint Venture v. Nat'l Broad. Co.,* 219 F.3d 92, 100 (2d Cir.2000); *Glass Equip. Dev., Inc. v. Besten, Inc.,* 174 F.3d 1337, 1343–44 (Fed.Cir.1999); *McGuire Oil Co. v. Mapco, Inc.,* 958 F.2d 1552, 1560 (11th Cir.1992); *897 CVD, Inc. v. Raytheon Co.,* 769 F.2d 842, 850–51 (1st Cir.1985); *Coastal States Mktg., Inc. v. Hunt,* 694 F.2d 1358, 1366–67 (5th Cir.1983)).

It logically follows that *Noerr-Pennington* protection would cover pre-suit demand letters and notices in the context of trademark infringement, because trademark owners may be "barred from recovering profits or damages if they do not notify the infringing party of the alleged infringement prior to filing their complaint." *Sweet St. Deserts, Inc. v. Chudleigh's Ltd.*, No. CIV.A. 12-3363, 2013 WL 1389760, at *6 (E.D. Pa. Apr. 4, 2013).

9

The alleged facts here are similar to *Select Comfort*, where the plaintiff, Select Comfort Corporation ("Select Comfort") instituted an action alleging unfair competition and trademark infringement claims, and the defendant counterclaimed for tortious interference with contract based upon a pre-suit demand letter that Select Comfort sent to third-party Overstock.com. 838 F. Supp. 2d at 890. Select Comfort's pre-suit demand letter provided notice that Select Comfort believed its trademark rights were being infringed on Overstock.com because defendant's "Number Air Mattress" was causing confusion among consumers looking to purchase Select Comfort's "Sleep Number" beds. *Id.* at 891.  In response to the letter, and after reviewing the alleged infringement, Overstock.com decided to remove the defendant's product from its website. *Id.* The court found that this letter was entitled to *Noerr-Pennington* immunity and noted that to hold otherwise would mean "that the First Amendment protects an owner of intellectual property rights who blindsides an adversary with a lawsuit claiming infringement of those rights, but fails to shield that same owner when a more civilized notice and demand letter is sent in advance." *Id.* at 899 (internal quotation omitted).

Here, Ancestry gave Groupon notice of its potential trademark infringement claims and Ancestry's trademark rights, because Ancestry believed that DDC's **ANCESTRYBYDNA** advertisements constituted trademark infringement and were confusing consumers. If Groupon decided to cease doing business with DDC, Groupon may have done so to mitigate its own damages, likely because Groupon saw the merit in Ancestry's claims, and that is Groupon's prerogative. Like *Select Comfort*, Ancestry allegedly put a third-party vendor on notice of potential infringement and consumer confusion. Like *Select Comfort*, the vendor (Groupon) allegedly made an independent determination to take down the product based on a likelihood of trademark infringement.

10

As with the malicious litigation counterclaim, DDC has not alleged any facts that suggest that the "claim of trademark infringement" falls under the "sham" exception to *Noerr-Pennington* immunity. DDC counterclaims do not even set forth the content of any such "claim of trademark infringement." However, Ancestry's Amended Complaint contains a screenshot of a Groupon advertisement depicting DDC's product with Ancestry's trademark. Am. Complaint at ¶ 45. In addition, Ancestry's Amended Complaint also shows a screenshot of a consumer being confused about the Groupon advertisement. *See id.* at ¶ 50. Despite DDC's conclusory allegations that Ancestry submitted a "false claim" to Groupon "with the specific intent" to interfere with DDC's business relationship, the Groupon advertisement speaks for itself and summarily defeats any argument that Ancestry's claim to Groupon was objectively baseless. Once again, DDC's allegation that Ancestry had a specific intent to interfere with DDC's business relationship with Groupon is nothing more than a legal conclusion couched as a factual allegation and must be disregarded. *Twombly*, 550 U.S. at 555. Therefore, Ancestry's alleged claim to Groupon is entitled to *Noerr-Pennington* immunity, and DDC cannot establish that the "sham" exception applies.

Finally, DDC has failed to allege all of the necessary elements of a tortious interference claim. DDC has not alleged that Ancestry's actions were not privileged. "One of the key elements in a tortious interference claim is the question of whether a defendant's actions were privileged…Ohio law imposes the burden of proving 'lack of privilege' or 'improper interference' on the plaintiff." *Wagner-Smith Co. v. Ruscilli Constr. Co.*, 139 Ohio Misc. 2d 101, 107, 861 N.E.2d 612, 617-18 (2006). DDC cannot establish that Ancestry's actions were not privileged and were improper because even accepting DDC's allegations as true, Ancestry was merely acting to protect its own legal interests.

11

Accordingly, Count VII of DDC's Counterclaims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## IV. CONCLUSION

For the foregoing reasons, Ancestry respectfully request that this Court: (1) dismiss Count IV of DDC's Counterclaims for Unfair Competition via Malicious Litigation pursuant to Fed. R. Civ. P. 12(b)(6) with prejudice; (2) dismiss Count VII of DDC's Counterclaims for Tortious Interference with Business Relationships pursuant to Fed. R. Civ. P. 12(b)(6) with prejudice; and grant such other and further relief and this Court deems just and proper.

Respectfully submitted,

/s/Alexis Arena
Jordan A. LaVine, Esq. (admitted *pro hac vice*)
Alexis Arena, Esq. (admitted *pro hac vice*)
FLASTER/GREENBERG P.C.
1600 John F. Kennedy Blvd., Suite 200
Philadelphia, PA 19103

and

Paul Linden, Esq.
Wood, Herron & Evans, L.L.C.
2700 Carew Tower
441 Vine Street
Cincinnati, OH 45202-2917

*Attorneys for Plaintiffs Ancestry.com Operations Inc. and Ancestry.com DNA, LLC*

Dated: February 12, 2016