# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| Ancestry.com Operations Inc. et al., | ) | Case No. 1:15-cv-00737-SSB-SKB |
| | ) | |
| Plaintiffs, | ) | Judge Sandra S. Beckwith |
| | ) | |
| vs. | ) | Magistrate Judge Stephanie K. Bowman |
| | ) | |
| DNA Diagnostics Center, Inc., | ) | **Defendant's First Amended Answer** |
| | ) | **and Counterclaim** |
| Defendant. | ) | |
| | ) | **Demand for Jury Trial** |

For its amended answer to the first amended complaint of plaintiffs Ancestry.com Operations Inc. and Ancestry.com DNA, LLC (collectively, "Ancestry.com"), defendant DNA Diagnostics Center, Inc. ("DDC") responds as follows:

1.      Insofar as Ancestry.com construes its complaint, the document speaks for itself. Otherwise, DDC denies the allegations in paragraph 1 of the first amended complaint.

2.      DDC admits that Ancestry.com filed a motion for preliminary injunction and motion for expedited discovery on November 24, 2015, admits a hearing on the preliminary injunction motion is set for January 29, 2016, admits that Rule 30(b)(6) depositions occurred during the week of December 21, 2015, and denies all other allegations in paragraph 2 of the first amended complaint.

3.      Insofar as Ancestry.com construes Dr. Baird's testimony, the transcript speaks for itself. Otherwise, DDC denies the allegations in paragraph 3 of the first amended complaint.

4. DDC denies that Ancestry.com has any enforceable rights against DDC, and otherwise denies the allegations in paragraph 4 of the first amended complaint because it lacks knowledge or information sufficient to form a belief as to the truth of those allegations.

5. DDC denies the allegations in paragraph 5 of the first amended complaint because it lacks knowledge or information sufficient to form a belief as to the truth of those allegations.

6. DDC denies the allegations in paragraph 6 of the first amended complaint because it lacks knowledge or information sufficient to form a belief as to the truth of those allegations.

7. DDC denies that Ancestry.com may assert marks together as a "family," denies that Ancestry.com may assert foreign trademarks in this U.S. action under U.S. law, and denies all other allegations in paragraph 7 of the first amended complaint because it lacks knowledge or information sufficient to form a belief as to the truth of those allegations.

8. Insofar as Ancestry.com construes the Trademark Office's public records, those records speak for themselves. Otherwise, DDC denies the allegations in paragraph 8 of the first amended complaint.

9. Insofar as Ancestry.com construes the Trademark Office's public records, those records speak for themselves. Otherwise, DDC denies the allegations in paragraph 9 of the first amended complaint.

10. Insofar as Ancestry.com construes the Trademark Office's public records, those records speak for themselves Otherwise, DDC denies the allegation about when Ancestry.com began using the "ANCESTRY.COM" term because it lacks knowledge or information sufficient form a belief as to the truth of those allegations, and denies all other allegations in paragraph 10 of the first amended complaint.

11. Insofar as Ancestry.com construes the Trademark Office's public records, those records speak for themselves. Otherwise, DDC denies the allegations in paragraph 11 of the first amended complaint.

12. Insofar as Ancestry.com construes the Trademark Office's public records, those records speak for themselves. Otherwise, DDC denies the allegations in paragraph 12 of the first amended complaint.

13. DDC denies the allegations in paragraph 13 of the first amended complaint because it lacks knowledge or information sufficient to form a belief as to the truth of those allegations.

14. DDC denies the allegations in paragraph 14 of the first amended complaint because it lacks knowledge or information sufficient to form a belief as to the truth of those allegations.

## As to "Ancestry's Repeated Disputes . . ."

15. Insofar as Ancestry.com construes a LivingSocial ad, the ad speaks for itself. Otherwise, DDC denies the allegation about when and how Ancestry.com learned about the LivingSocial ad in question because it lacks knowledge or information sufficient form

a belief as to the truth of those allegations, and denies all other allegations in paragraph 15 of the first amended complaint.

16. DDC admits that, in 2012, Ancestry.com began infringement of DDC's preexisting and registered ANCESTRYBYDNA mark by using the ANCESTRYDNA mark for the same or similar goods and services in the same or similar channels of trade. Otherwise, DDC denies the allegations in paragraph 16 of the first amended complaint.

17. Insofar as Ancestry.com construes Dr. Baird's deposition testimony, the transcript speaks for itself. Otherwise, DDC admits that others appear to have offered its AncestrybyDNA test, at one or more times, for $97 and at other prices, and denies all other allegations in paragraph 17 of the first amended complaint.

18. Insofar as Ancestry.com construes written correspondence exchanged by the parties' outside attorneys, those documents speak for themselves. Otherwise, DDC denies the allegations in paragraph 18 of the first amended complaint.

19. Insofar as Ancestry.com construes Dr. Baird's deposition testimony, the transcript speaks for itself. Otherwise, DDC denies the allegations in paragraph 19 of the first amended complaint.

20. Insofar as Ancestry.com construes a LivingSocial ad or Dr. Baird's deposition testimony, the ad and transcript, respectively, speak for themselves. Otherwise, DDC denies the allegations in paragraph 20 of the first amended complaint.

21. Insofar as Ancestry.com construes deal site ads or written correspondence exchanged by the parties' outside counsel, the ads and written correspondence,

respectively, speak for themselves. Otherwise, DDC denies the allegations in paragraph 21 of the first amended complaint.

22. Insofar as Ancestry.com construes the Trademark Office's public records or written correspondence exchanged by the parties' outside counsel, those records and written correspondence, respectively, speak for themselves. Otherwise, DDC denies the allegations in paragraph 22 of the first amended complaint.

23. Insofar as Ancestry.com construes the Trademark Office's public records or written correspondence exchanged by the parties' outside counsel, those records and written correspondence, respectively, speak for themselves. Otherwise, DDC denies the allegations in paragraph 23 of the first amended complaint.

24. Insofar as Ancestry.com construes the Trademark Office's public records, those records speak for themselves. Otherwise, DDC denies the allegations in paragraph 24 of the first amended complaint.

25. Insofar as Ancestry.com construes the Trademark Office's public records, those records speak for themselves. Otherwise, DDC denies the allegations in paragraph 25 of the first amended complaint.

### As to "DDC's Expanded and Infringing Use . . ."

26. DDC admits that Ancestry.com did not begin using the ANCESTRYDNA mark until 2012, and denies all other allegations in paragraph 26 of the first amended complaint.

27. Insofar as Ancestry.com construes chain-of-title documents, they speak for themselves. Otherwise, DDC admits that DNA Print Genomics, Inc.'s ("DNA Print's") use

of the ANCESTRYBYDNA mark dates back to 2001 (and that DDC owns all of the benefits and rights that inure from that past use), and denies all other allegations in paragraph 27 of the first amended complaint.

28.     DDC admits that DNA Print licensed the ANCESTRYBYDNA mark to DDC beginning in at least 2007 until DDC obtained full ownership of the mark in 2012, and denies all other allegations in paragraph 28 of the first amended complaint.

29.     DDC denies the allegations in paragraph 29 of the first amended complaint.

30.     DDC denies the allegations in paragraph 30 of the first amended complaint.

31.     DDC denies the allegations in paragraph 31 of the first amended complaint.

32.     DDC denies the allegations in paragraph 32 of the first amended complaint.

33.     Insofar as Ancestry.com construes a revenue sheet produced at deposition, the document speaks for itself. Otherwise, DDC denies the allegations in paragraph 33 of the first amended complaint.

34.     Insofar as Ancestry.com construes a revenue sheet produced at deposition, the document speaks for itself. Otherwise, DDC admits that, for many years, it has offered paternity, forensic, veterinary, and ancestry DNA testing, and denies all other allegations in paragraph 34 of the first amended complaint.

35.     DDC admits that it owns and uses trademarks that do not contain the word "Ancestry," and denies all other allegations in paragraph 35 of the first amended complaint.

36.     DDC admits that it sells a DNA test under the CONNECTMYDNA mark through its website at ConnectmyDNA.com and through deal sites, admits that others

appear to have offered its ConnectmyDNA test, at one or more times, for $25 and at other prices, and denies all other allegations in paragraph 36 of the first amended complaint.

37.     DDC denies the allegations in paragraph 37 of the first amended complaint.

**As to "Confusion Between Ancestry's Marks and ANCESTRYBYDNA"**

38.     DDC admits that Ancestry.com's infringing use of the ANCESTRYDNA mark has caused confusion and denies all other allegations in paragraph 38 of the first amended complaint.

39.     DDC denies the allegations in paragraph 39 of the first amended complaint.

40.     DDC admits that Ancestry.com's infringing use of the ANCESTRYDNA mark has caused confusion and denies all other allegations in paragraph 40 of the first amended complaint.

41.     DDC admits that it continues to use the ANCESTRYBYDNA mark in connection with the same DNA test that DNA Print sold under that mark in 2001 and later, specifically denies that the test is "woefully inferior" to other DNA tests, and denies all other allegations in paragraph 41 of the first amended complaint.

42.     DDC admits that Ancestry.com's infringing use of the ANCESTRYDNA mark has caused consumer confusion and denies all other allegations in paragraph 42 of the first amended complaint.

43.     Insofar as Ancestry.com construes written correspondence exchanged by the parties' outside attorneys, those documents speak for themselves. Otherwise, DDC admits that Ancestry.com's infringing use of the ANCESTRYDNA mark has caused confusion and denies all other allegations in paragraph 43 of the first amended complaint.

44.     Insofar as Ancestry.com construes written correspondence exchanged by the parties' outside attorneys, those documents speak for themselves. Otherwise, DDC denies the allegations in paragraph 44 of the first amended complaint.

45.     DDC denies the allegations in paragraph 45 of the first amended complaint.

46.     DDC denies the allegations in paragraph 46 of the first amended complaint.

47.     DDC admits that Ancestry.com's infringing use of the ANCESTRYDNA mark has caused confusion and denies all other allegations in paragraph 47 of the first amended complaint.

48.     DDC admits that Ancestry.com's infringing use of the ANCESTRYDNA mark has caused confusion and denies all other allegations in paragraph 48 of the first amended complaint.

49.     DDC admits that Ancestry.com's infringing use of the ANCESTRYDNA mark has caused confusion and denies all other allegations in paragraph 49 of the first amended complaint.

50.     DDC admits that Ancestry.com's infringing use of the ANCESTRYDNA mark has caused confusion and denies all other allegations in paragraph 50 of the first amended complaint.

51.     Insofar as Ancestry.com construes written correspondence exchanged by the parties' outside attorneys, those documents speak for themselves. Otherwise, DDC denies the allegations in paragraph 51 of the first amended complaint.

52.     DDC denies the allegations in paragraph 52 of the first amended complaint.

53.     DDC admits that the parties did not settle, admits that Ancestry.com sued DDC, and denies the other allegations in paragraph 53 of the first amended complaint.

## As to "DDC's Purported Limited Trademark Rights . . ."

54.     Insofar as Ancestry.com construes chain-of-title documents, they speak for themselves. Otherwise, DDC admits that it obtained full ownership of the ANCESTRYBYDNA mark in 2012, and denies all other allegations in paragraph 54 of the first amended complaint.

55.     DDC denies the allegations in paragraph 55 of the first amended complaint.

56.     Due to vagueness, DDC denies the allegations in paragraph 56 of the first amended complaint because it lacks knowledge or information sufficient form a belief as to the truth of those allegations.

57.     DDC denies the allegations in paragraph 57 of the first amended complaint because it lacks knowledge or information sufficient form a belief as to the truth of those allegations.

58.     DDC denies the allegations in paragraph 58 of the first amended complaint.

59.     Insofar as Ancestry.com construes the Trademark Office's public records, those records speak for themselves. Otherwise, DDC denies the allegations in paragraph 59 of the first amended complaint because it lacks knowledge or information sufficient form a belief as to the truth of those allegations.

60.     DDC denies the allegations in paragraph 60 of the first amended complaint

61.     Insofar as Ancestry.com construes the Trademark Office's public records, those records speak for themselves. Otherwise, DDC denies the allegations in paragraph 61 of the first amended complaint.

62.     DDC denies the allegations in paragraph 62 of the first amended complaint.

63.     Insofar as Ancestry.com construes the Trademark Office's public records, those records speak for themselves. Otherwise, DDC denies the allegations in paragraph 63 of the first amended complaint.

64.     Insofar as Ancestry.com construes the Trademark Office's public records, those records speak for themselves. Otherwise, DDC denies the allegations in paragraph 64 of the first amended complaint.

65.     DDC denies the allegations in paragraph 65 of the first amended complaint.

66.     DDC denies the allegations in paragraph 66 of the first amended complaint.

67.     DDC denies the allegations in paragraph 67 of the first amended complaint.

68.     DDC denies the allegations in paragraph 68 of the first amended complaint.

### As to "Jurisdiction and Venue"

69.     DDC admits that this Court has subject matter jurisdiction, and otherwise denies paragraph 69 of the first amended complaint.

70.     DDC admits that this Court has subject matter jurisdiction, and otherwise denies paragraph 70 of the first amended complaint.

71.     DDC denies the allegations in paragraph 71 of the first amended complaint because it lacks knowledge or information sufficient form a belief as to the truth of those allegations.

72.     DDC denies the allegations in paragraph 72 of the first amended complaint because it lacks knowledge or information sufficient form a belief as to the truth of those allegations.

73.     DDC admits the allegations in paragraph 73 of the first amended complaint.

74.     DDC admits that the Court has personal jurisdiction over all parties, admits that venue is proper here, and denies all other allegations in paragraph 74 of the first amended complaint.

## As to "Count I"

75.     DDC repeats and re-alleges the responses contained in the preceding paragraphs of this answer as though the same were fully rewritten herein.

76.     Insofar as Ancestry.com construes 15 U.S.C. § 1114, the statute speaks for itself. Otherwise, DDC denies the allegations in paragraph 76 of the first amended complaint.

77.     DDC admits that Ancestry.com's infringing use of the ANCESTRYDNA mark is likely to cause confusion with DDC's preexisting ANCESTRYBYDNA mark, admits that Ancestry.com has caused confusion, and denies all other allegations in paragraph 77 of the first amended complaint.

78.     DDC admits that Ancestry.com's infringing use of the ANCESTRYDNA mark has caused confusion and denies all other allegations in paragraph 78 of the first amended complaint.

79.     DDC specifically denies the implication that it needed Ancestry.com's consent to use DDC's ANCESTRYBYDNA mark or to use the English word "Ancestry" to

describe its ancestry DNA tests, and otherwise denies the allegations in paragraph 79 of the first amended complaint.

80.     DDC denies the allegations in paragraph 80 of the first amended complaint.

81.     Insofar as Ancestry.com construes the Trademark Office's public records or construes a statutory provision within the Lanham Act, those records and provision, respectively, speak for themselves. Otherwise, DDC denies the allegations in paragraph 81 of the first amended complaint.

82.     DDC specifically denies that it is infringing any trademark rights that Ancestry.com may have, and otherwise denies the allegations in paragraph 82 of the first amended complaint because it lacks knowledge or information sufficient form a belief as to the truth of those allegations.

83.     Insofar as Ancestry.com construes the Trademark Office's public records or construes statutory provisions within the Lanham Act, those records and provisions, respectively, speak for themselves. Otherwise, DDC denies the allegations in paragraph 83 of the first amended complaint.

84.     DDC admits that Ancestry.com's infringing use of the ANCESTRYDNA mark is confusingly similar to DDC's preexisting ANCESTRYBYDNA mark, and denies all other allegations in paragraph 84 of the first amended complaint.

85.     DDC admits that Ancestry.com's infringing use of the ANCESTRYDNA mark is likely to cause confusion with DDC's preexisting ANCESTRYBYDNA mark, and denies all other allegations in paragraph 85 of the first amended complaint.

86.    DDC admits that Ancestry.com's infringing use of the ANCESTRYDNA mark is likely to cause confusion with DDC's preexisting ANCESTRYBYDNA mark, and denies all other allegations in paragraph 86 of the first amended complaint.

87.    DDC admits that Ancestry.com's infringing use of the ANCESTRYDNA mark is likely to cause confusion with DDC's preexisting ANCESTRYBYDNA mark, and denies all other allegations in paragraph 87 of the first amended complaint.

88.    DDC denies the allegations in paragraph 88 of the first amended complaint.

89.    DDC denies the allegations in paragraph 89 of the first amended complaint.

90.    DDC denies the allegations in paragraph 90 of the first amended complaint.

91.    DDC denies the allegations in paragraph 91 of the first amended complaint.

### As to "Count II"

92.    DDC repeats and re-alleges the responses contained in the preceding paragraphs of this answer as though the same were fully rewritten herein.

93.    Insofar as Ancestry.com construes a statutory provision within the Lanham Act, that provision speaks for itself. Otherwise, DDC denies the allegations in paragraph 93 of the first amended complaint.

94.    DDC admits that Ancestry.com's infringing use of the ANCESTRYDNA mark is likely to cause confusion with DDC's preexisting ANCESTRYBYDNA mark, and denies all other allegations in paragraph 94 of the first amended complaint.

95.    DDC denies the allegations in paragraph 95 of the first amended complaint.

96.    DDC denies the allegations in paragraph 96 of the first amended complaint.

97.    DDC denies the allegations in paragraph 97 of the first amended complaint.

## As to "Count III"

98.     DDC repeats and re-alleges the responses contained in the preceding paragraphs of this answer as though the same were fully rewritten herein.

99.     Insofar as Ancestry.com construes written correspondence exchanged by the parties' outside counsel, those documents speak for themselves. Otherwise, DDC denies the allegations in paragraph 99 of the first amended complaint.

100.    DDC denies the allegations in paragraph 100 of the first amended complaint.

101.    DDC denies the allegations in paragraph 101 of the first amended complaint.

102.    DDC denies the allegations in paragraph 102 of the first amended complaint.

## As to "Count IV"

103.    DDC repeats and re-alleges the responses contained in the preceding paragraphs of this answer as though the same were fully rewritten herein.

104.    DDC denies the allegations in paragraph 104 of the first amended complaint.

105.    Insofar as Ancestry.com construes the Trademark Office's public records, those records speak for themselves. Otherwise, DDC denies the allegations in paragraph 105 of the first amended complaint.

106.    DDC denies the allegations in paragraph 106 of the first amended complaint.

107.     DDC denies the allegations in paragraph 107 of the first amended complaint.

108.     DDC denies the allegations in paragraph 108 of the first amended complaint.

109.     DDC denies the allegations in paragraph 109 of the first amended complaint.

110.     DDC denies the allegations in paragraph 110 of the first amended complaint.

## As to Plaintiffs' Prayer for Relief

111.     DDC denies that Ancestry.com is entitled to any of the relief requested in its first amended complaint.

## DDC's Affirmative Defenses

1.     Ancestry.com's first amended complaint fails to state a claim upon which relief can be granted.

2.     Ancestry.com's claims are barred by the doctrines of laches, estoppel, consent, acquiescence, and waiver.

3.     Ancestry.com's claims are barred by the doctrine of unclean hands.

4.     Ancestry.com's claims against DDC's use of the English word "Ancestry" are barred by the First Amendment to the U.S. Constitution, and similar protections granted by the Ohio Constitution and other state constitutions.

5.     Ancestry.com's claims against DDC's use of the English word "Ancestry" are barred by the fair use defense.

6.     Ancestry.com's ANCESTRY mark is generic and not eligible for trademark protection or registration.

7.     Ancestry.com's claims are barred, in whole or in part, by its failure to mitigate its damages, if any.

WHEREFORE, DDC prays that the Court dismiss all claims against DDC with prejudice and award fees and costs to DDC.

## Counterclaim

In accordance with Rules 13 and 15(a)(1)(B) of the Federal Rules of Civil Procedure, DDC asserts its amended counterclaim against Ancestry.com:

## The Parties

1.      DDC is an Ohio corporation with a principal place of business in Ohio.

2.      Upon information and belief, Ancestry.com Operations Inc. is a Delaware corporation with a principal place of business in Utah.

3.      Upon information and belief, Ancestry.com DNA, LLC is a Delaware limited liability company with a principal place of business in Utah.

4.      Again, Ancestry.com Operations Inc. and Ancestry.com DNA, LLC are referred to collectively throughout this pleading as "Ancestry.com."

## Jurisdiction and Venue

5.      To the extent the claims asserted in the complaint are within this Court's subject matter jurisdiction, this counterclaim also is within that subject matter jurisdiction.

6.      Furthermore, this Court has subject matter jurisdiction over DDC's Lanham Act claims under 15 U.S.C. § 1121 and under 28 U.S.C. § 1331 because those claims arise under federal law.

7.      This Court has supplemental subject matter jurisdiction over DDC's state law claims under 28 U.S.C. § 1367 because those claims are so related to the Lanham Act claims that together the claims are part of the same case or controversy under Article III.

8.     This Court also has subject matter jurisdiction over this entire action under 28 U.S.C. § 1332 because the parties are diverse and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9.     This Court has personal jurisdiction over Ancestry.com because, by filing this action, it has consented to this Court exercising jurisdiction over it and, in addition, it has sufficient contacts with the state of Ohio to trigger jurisdiction under the Ohio long-arm statute and to satisfy both general and specific jurisdiction under a Due Process analysis.

10.    To the extent venue is proper for the claims asserted in the complaint, venue is proper for this counterclaim. Moreover, because both Ancestry.com defendants are subject to personal jurisdiction in this district under Ohio law, they both "reside" in this district under federal law, which makes venue here appropriate under 28 U.S.C. § 1391.

## Facts

### *DDC's Rights*

11.    DDC, which is based in Fairfield, Ohio, is a DNA testing business.

12.    Since its incorporation in 1995, DDC has provided a wide variety of DNA testing products and services, including forensic DNA testing, relationship testing using DNA methodology, DNA testing for medical purposes, and ancestry testing.

13.    DDC's AncestrybyDNA test is an ancestry DNA test that predicts which of the four major broad biogeographic anthropological groups—Indigenous American, East Asian, Sub-Saharan African, and European—a person is most closely related to. Here's how the test works:

      (a)      When a customer places an order, DDC (or DNA Print[1] before it) sends a DNA collection kit to the customer who then swabs a sample from inside his or her cheek.

      (b)      The customer sends the sample to DDC for testing.

      (c)      After DDC tests the sample, DDC provides the customer with a certificate showing his or her ancestral proportions among the four ancestral groups and a results manual.

14.      So, for example, an AncestrybyDNA test may show a person is 50% European, 25% Indigenous American, 25% East Asian, and 0% Sub-Saharan African.

### *History of AncestrybyDNA Test*

15.      DDC, and DNA Print before it, have sold the AncestrybyDNA test under the ANCESTRYBYDNA mark from 2001 to the present.

16.      DNA Print first used the ANCESTRYBYDNA mark for the AncestrybyDNA test by at least 2001.

17.      DNA Print advertised and sold the AncestrybyDNA test on the AncestrybyDNA.com website from at least 2002 until 2009.

18.      DNA Print applied for a federal trademark registration to the term ANCESTRYBYDNA on August 12, 2005.

19.      By at least 2007, DDC began selling the AncestrybyDNA test under the ANCESTRYBYDNA mark online as a distributor for DNA Print.

20.      On March 25, 2008, The USPTO granted registration on the principal register. A true copy of the registration certificate is attached as Exhibit 1.

---

[1] "DNA Print" refers to DDC's predecessor-in-interest, DNA Print Genomics, Inc.

21.     In 2009, DDC obtained from DNA Print an exclusive license to the AncestrybyDNA test, the ANCESTRYBYDNA mark, and the AncestrybyDNA.com website. DDC took over and continued the sales of the AncestrybyDNA test under the ANCESTRYBYDNA mark at least through the AncestrybyDNA.com website.

22.     In 2012, DDC obtained full ownership of the AncestrybyDNA test, the ANCESTRYBYDNA mark (including the trademark registration), and certain other assets of DNA Print, becoming DNA Prints' successor-in-interest as to the test and the mark.

23.     To this day, DDC continues to use the ANCESTRYBYDNA mark on its AncestrybyDNA.com website, on test results, and on other materials provided to customers, just as DNA Print had. And DDC does so for the very same AncestrybyDNA test that DNA Print began selling in 2001.

24.     The federal registration for the ANCESTRYBYDNA mark has become incontestable under § 15 of the Lanham Act because the mark has been in continuous use for five consecutive years subsequent to the date of registration and is still in use in in commerce today.

### *Ancestry.com's Infringement*

25.     Ancestry.com describes itself as the "world's largest online resource for family history."

26.     Ancestry.com provides a website through which people purchase subscriptions to obtain information about their ancestry, largely through historical records such as birth, death, and marriage certificates and census data.

27.     According to Ancestry.com, the "foundation of our service is an extensive collection of billions of historical records that we have digitized, indexed and put online over the past 18 years."

28.     In 2002, Ancestry.com launched a test that it called "GenetiKit," which it sold through its Ancestry.com website. Upon information and belief, GenetiKit was Ancestry.com's first ancestry DNA testing product. The product failed and was discontinued shortly thereafter.

29.     Upon information and belief, in 2007, Ancestry.com launched a new ancestry DNA test, which it also sold through its website. Ancestry.com referred to that test generically as the "Ancestry.com" test.

30.     Ancestry.com sold the "Ancestry.com" test until 2012, when it launched an ancestry DNA test that it called "AncestryDNA."

31.     Ancestry.com offered, and continues to offer, its AncestryDNA test under the ANCESTRYDNA mark. Ancestry.com never used the ANCESTRYDNA mark prior to 2012. Ancestry.com offers its AncestryDNA test under the ANCESTRYDNA mark through websites at ancestrydna.com and dna.ancestry.com.

32.     Ancestry.com also promotes AncestryDNA under the ANCESTRYDNA mark at least through television commercials, Google text advertisements, e-commerce websites such as Groupon, and sponsored posts on third-party blogs.

33.     The ANCESTRYDNA mark is confusingly similar to DDC's preexisting and registered ANCESTRYBYDNA mark.

34.     Ancestry.com's use of the ANCESTRYDNA mark to promote and sell an ancestry DNA test is likely to cause (and has actually caused) confusion between that mark and associated DNA test with DDC's ANCESTRYBYDNA mark and associated DNA test, and it is likely to cause (and has actually caused) confusion about the source of the two DNA tests.

35.     Prior to choosing the ANCESTRYDNA mark, Ancestry.com had at least constructive knowledge of DDC's ANCESTRYBYDNA mark based on the federal registration of that mark in 2008.

36.     After Ancestry.com started using the ANCESTRYDNA mark for the first time in 2012, confusion between that mark and DDC's preexisting ANCESTRYBYDNA mark began.

37.     Upon information and belief, there was no confusion between the ANCESTRYBYDNA mark and any advertising for AncestrybyDNA by DDC and DNA Print, on the one hand, and any of Ancestry.com's marks, on the other hand, from 2001 to 2012.

38.     Ancestry.com's use of the ANCESTRYDNA mark in commerce infringes DDC's common-law and federally registered rights in and to the ANCESTRYBYDNA mark.

39.     As a result of Ancestry.com's use of the ANCESTRYDNA mark in commerce, DDC has suffered and will continue to suffer significant harm to its reputation and goodwill, and to its sales and revenues, among other things.

### *Ancestry.com's Generic ANCESTRY Mark*

40.     Ancestry.com purports to sell ancestry DNA tests and other goods and services under the "ANCESTRY" mark.

41.     The term "Ancestry" refers, and has come to be understood as referring, to a class of goods or services that provide information about one's ancestry.

42.     To the extent Ancestry.com purports to have trademark rights to the word "Ancestry" by using that word in connection with goods and services that provide ancestry information to people, such use is a generic use that does not give rise to any enforceable trademark rights and which should result in the cancellation of Ancestry.com's federal registration to the "Ancestry" term, Reg. No. 1,577,711, as sought by this counterclaim.

### *Ancestry.com's Baseless and Abusive Lawsuit*

43.     In November 2015, Ancestry.com filed this action and alleges that DDC's use of the ANCESTRYBYDNA mark infringes Ancestry.com's trademark rights.

44.     Ancestry.com's claims against DDC are objectively baseless at least because: (a) DDC's ANCESTRYBYDNA mark predates Ancestry.com's ANCESTRYDNA mark by over 10 years and, consequently, it is Ancestry.com's ANCESTRYDNA mark that infringes DDC's trademark rights in the ANCESTRYBYDNA mark; (b) DDC's ANCESTRYBYDNA mark cannot infringe Ancestry.com's purported rights to the ANCESTRY and ANCESTRY.COM marks because there is no likelihood of confusion between those marks as used by Ancestry.com over the years and DDC's and DNA Print's use of the ANCESTRYBYDNA mark, as evidenced by the fact that there was no reported actual confusion between those marks during more than 10 years of coexistence between 2001 and 2012; (c) DDC's alleged use of the word "Ancestry," including in phrases such as "Ancestry DNA Test [or Testing]" and "DNA Ancestry Test [or Testing]," is a fair use of that word to describe ancestry goods and services, so that such use cannot constitute trademark infringement under 15 U.S.C. §

1115(b)(4) and (d) Ancestry.com's ANCESTRY mark is generic, and thus not protectable or entitled to the benefits of registration or incontestability.

45. As the infringer and newcomer with respect to its ANCESTRYDNA mark, it is Ancestry.com that is responsible for the marketplace confusion that it has caused, and not DDC. Ancestry.com filed this lawsuit, among other reasons, with the bad faith intent of using the filing and allegations in its complaint to create the false public appearance that DDC is to blame for the confusion that Ancestry.com has caused, which is contrary to law and fact, with the bad faith intent of damaging DDC's reputation, goodwill, and business.

46. As part of its unlawful plan, after Ancestry.com filed this action in November 2015, Ancestry.com submitted a complaint to Groupon, which is a deal website that was selling DDC's AncestrybyDNA test. The submission of the complaint, which falsely accused DDC of infringing the ANCESTRYDNA mark, caused Groupon to cease offering deals for DDC's AncestrybyDNA test to Groupon customers. This has caused a significant loss of sales and revenue for DDC. Groupon has since returned to offering DDC's AncestyrbyDNA test, but only with promotions that are less effective than past promotions due to their omission of the descriptive "Ancestry" word.

47. DDC lost significant sales during the period in which Groupon was not offering AncestrybyDNA promotions and, upon information and belief, DDC continues to lose sales with the less effective promotions that Groupon has implemented as a result of Ancestry.com's false complaint.

48.     Ancestry.com did not file its lawsuit to vindicate a legitimate legal claim, but instead for the improper purpose of using aggressive, full-tilt litigation to stoke bad publicity against DDC, to drive up DDC's legal fees, and to harass, annoy, and try and embarrass DDC, so that DDC's ability to compete against Ancestry.com would be injured, DDC's business would be injured, and DDC would cave in and give up its lawful right to use its ANCESTRYBYDNA mark.

49.     Moreover, Ancestry.com has filed this lawsuit as part of an unlawful scheme to use the threat of litigation, and the associated legal fees, burdens, and stigma, to intimidate competitors into not using the "Ancestry" word in the marketing of ancestry goods and services to describe those goods and services, despite those competitors having the legal and constitutional right to use that term, thereby giving Ancestry.com an unlawful monopoly to that word and an unfair advantage over others in the marketplace.

## Count One
*Trademark Infringement of a Registered Trademark*
(15 U.S.C. § 1114)

50.     DDC incorporates by reference all allegations in all preceding paragraphs of this pleading as if fully rewritten herein.

51.     The ANCESTRYBYDNA mark is valid and legally enforceable.

52.     DDC alone owns the ANCESTRYBYDNA mark, the federal registration to that mark, and all of the common law rights to the mark that exist due to over a decade of use of that mark in commerce by DDC and by DNA Print before it.

53.     The ANCESTRYBYDNA mark is distinctive.

54. By using the ANCESTRYDNA mark in connection with DNA testing, Ancestry.com has caused, and is likely to continue to cause, confusion in the minds of purchasers between Ancestry.com, DDC, and their respective goods and services.

55. Ancestry.com has willfully infringed DDC's trademark rights under the Lanham Act.

56. Ancestry.com's trademark infringement has damaged DDC in an amount to be determined at trial.

<u>**Count Two**</u>
*Trademark Infringement, Unfair Competition, and False and Misleading Advertising*
(15 U.S.C. § 1125(a))

57. DDC incorporates by reference all preceding allegations in this complaint as if fully rewritten herein.

58. Ancestry.com's use of the ANCESTRYDNA mark falsely suggests that DDC is the source of, or is somehow affiliated with the provision of, Ancestry.com's products and services, and is likely to deceive members of the relevant trade and public, into believing that Ancestry.com's products and services are affiliated with or offered in conjunction with DDC, in violation of 15 U.S.C. § 1125(a).

59. Ancestry.com's conduct constitutes trademark infringement, unfair competition, false and misleading advertising, and false designation of origin in violation of 15 U.S.C. § 1125(a).

60. Ancestry.com's conduct is being conducted with willful disregard of DDC's valuable trademark rights in the ANCESTRYBYDNA mark. It represents a willful attempt to

trade upon the goodwill that DDC and DNA Print have developed in the ANCESTRYBYDNA mark through their many years of use of that mark.

61. Ancestry.com's violations of 15 U.S.C. § 1125(a) have damaged DDC in an amount to be determined at trial.

**Count Three**
*Cancellation of the ANCESTRY mark*
(15 U.S.C. § 1119)

62. DDC incorporates by reference all preceding allegations in this complaint as if fully rewritten herein.

63. Ancestry.com's ANCESTRY mark, Reg. No. 1,577,711, is not eligible for trademark protection or registration because the term "Ancestry" is a generic term for the goods and services sold under the mark.

64. The Court should cancel Reg. No. 1,577,711 in accordance with 15 U.S.C. § 1119.

**Count Four**
*Cancellation of the ANCESTRYDNA mark*
(15 U.S.C. § 1119)

65. DDC incorporates by reference all preceding allegations in this complaint as if fully rewritten herein.

66. On January 22, 2013, the USPTO issued a registration on the principal register for the word mark ANCESTRYDNA to Ancestry.com Operations Inc. for services in classes 42 and 43 relating to DNA testing, Reg. No. 4,280,444.

67. The USPTO should have refused registration of the ANCESTRYDNA mark because it so resembles DDC's registered ANCESTRYBYDNA mark that it is likely, when

used in connection with the services identified in Ancestry.com's application, to cause confusion, or to cause mistake, or to deceive.

68.     Because Ancestry.com has no right to the registration that it obtained to the ANCESTRYDNA mark, the Court should cancel the registration in accordance with 15 U.S.C. § 1119.

## Count Five
### *Unfair Competition -- Malicious Litigation*

69.     DDC incorporates by reference all preceding allegations in this complaint as if fully rewritten herein.

70.     Ancestry.com's legal action against DDC is objectively baseless, as set forth herein.

71.     Ancestry.com filed the action with the subjective intent to injure DDC's ability to be competitive, with malice, and with bad faith.

72.     Ancestry.com's malicious litigation against DDC is an actionable form of unfair competition that has damaged DDC in an amount to be determined at trial.

## Count Six
### *Unfair Competition*

73.     DDC incorporates by reference all preceding allegations in this complaint as if fully rewritten herein.

74.     Ancestry.com's unlawful activities, as described above, are unfair competition under the common law.

75.     Ancestry.com's unfair competition has damaged DDC in an amount to be determined at trial.

## Count Seven

*Violations of the Ohio Deceptive Trade Practices Act*
(Ohio Revised Code § 4165.01 *et seq.*)

76.     DDC incorporates by reference all preceding allegations in this complaint as if fully rewritten herein.

77.     Ancestry.com's unlawful activities, as described above, are willful violations of Ohio's Deceptive Trade Practices Act.

78.     Ancestry.com's violations of Ohio's Deceptive Trade Practices Act have damaged DDC in an amount to be determined at trial.

## Count Eight

*Tortious Interference with Business Relationships*

79.     DDC incorporates by reference all preceding allegations in this complaint as if fully rewritten herein.

80.     At the time that Ancestry.com submitted a false claim of trademark infringement against DDC to Groupon, which happened in or around November 2015, DDC had a reasonable expectation of future business dealings and relationships with Groupon and Groupon's customers, whereby Groupon would continue to sell, and Groupon customers would continue to purchase, DDC's AncestrybyDNA test through Groupon deals.

81.     At the time that Ancestry.com submitted the false claim to Groupon, it knew about DDC's expectation of future business with Groupon and Groupon customers.

82.     Ancestry.com submitted the false claim with the specific intent that DDC's prospective business relationships with Groupon and Groupon customers would terminate and not materialize, which is what happened as a result of Ancestry.com's false claim.

83. Upon information and belief, Ancestry.com has also tortiously interfered with DDC's prospective business relationships with DNA testing customers, of which Ancestry.com had knowledge, through a publicity campaign that has resulted in public statements, including online statements published by third-party bloggers, that incorrectly blame DDC for the confusion that Ancestry.com's trademark infringement has caused and falsely portray DDC as an unethical company, which, upon information and belief, has resulted in prospective customers declining to purchase DNA tests from DDC.

84. Ancestry.com tortiously interfered with DDC's business relationships with actual malice and by wrongful means, as set forth herein.

85. Ancestry.com's intentional and tortious interference with DDC's business relationships has damaged DDC in an amount to be determined at trial.

## Prayer for Relief

**WHEREFORE**, DDC prays for judgment against Ancestry.com as follows:

(A)   Compensatory damages in an amount to be determined at trial.

(B)   An accounting and disgorgement of Ancestry.com's ill-gotten profits.

(C)   Punitive damages or treble damages, whichever are higher.

(D)   Attorneys' fees.

(E)   Pre-judgment and post-judgment interest.

(F)   Costs of the action.

(G)   Preliminary and permanent injunctive relief, barring Ancestry.com and others from: (i) using the ANCESTRYDNA mark or anything confusingly similar to DDC's ANCESTRYBYDNA mark as business name, brand name, trade name, trademark, or service mark, or in any other manner that is likely to cause confusion with DDC's

ANCESTRYBYDNA mark; and (ii) committing any of the other wrongful acts cited in this amended counterclaim.

(H)     An order cancelling Ancestry.com's registrations to the ANCESTRY mark, Reg. No. 1,577,711, and the ANCESTRYDNA mark, Reg. No. 4,280,444.

(I)      Such other and further relief as allowed at law or in equity that the Court deems to be appropriate and to which DDC is entitled.

Dated: March 7, 2016

   s/ David B. Cupar
David B. Cupar (OH 0071622)
*Trial Attorney*
Matthew J. Cavanagh (OH 0079522)
Maxwell J. Goss (admitted *pro hac vice*)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 │ f 216.348.5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com
mgoss@mcdonaldhopkins.com

*Counsel for DNA Diagnostics Center, Inc.*

## **Jury Demand**

DDC hereby demands a jury trial for all issues so triable.

   s/ David B. Cupar
*Counsel for DNA Diagnostics Center, Inc.*

<u>Certificate of Service</u>

I hereby certify that on March 7, 2016, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system.

   <u>s/ David B. Cupar</u>
*Counsel for DNA Diagnostics Center, Inc.*