### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| Ancestry.com Operations, Inc., et al.. | ) ) ) |
| Plaintiffs, | ) Case No. 1:15-CV-737 ) |
| vs. | ) ) |
| DNA Diagnostics Center, Inc., | ) ) |
| Defendant. | ) |

## O R D E R

This matter is before the Court on Plaintiff Ancestry.com Operations, Inc., et al.'s motion for a preliminary injunction (Doc. No. 8), Magistrate Judge Bowman's Report and Recommendation (Doc. No. 38) recommending that Plaintiffs' motion for a preliminary injunction be granted in part, the parties' objections to the Report and Recommendation (Doc. Nos. 49 & 50), and Plaintiffs' motion to file a sur-reply (Doc. No. 55). For the reasons that follow, Defendant DNA Diagnostic Center, Inc.'s ("DDC") objections to the Report and Recommendation are well-taken and are **SUSTAINED**; Plaintiffs' objections to the Report and Recommendation are not well-taken and are **OVERRULED.** The Court does not adopt Magistrate Judge Bowman's recommendation that Plaintiffs' motion for a preliminary injunction be granted in part. The Court concludes that Plaintiffs have not established a strong likelihood of success on the merits of their claims of trademark infringement against Defendant and that, therefore, they are not entitled to a preliminary injunction. Plaintiffs' motion to file a sur-reply is not well-taken and is **DENIED.**

Magistrate Judge Bowman has throughly set forth the facts presented during the evidentiary hearing over which she presided and, although the parties quibble over several of her findings, the Court will not endeavor to summarize the entire record or to issue detailed findings of fact. In interests of brevity and arriving at expeditious resolution to the motion for preliminary injunction, the Court will cite only those facts necessary to support its ruling on the motion. Moreover, because the Court ultimately concludes that Plaintiffs have not demonstrated a strong likelihood of success on the merits of its trademark infringement claims, it need not address the other factors involved in deciding whether to issue a preliminary injunction. Gonzales v. National Bd. of Med. Examiners, 225 F.3d 620, 625 (6th Cir.2000) ("Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal."). To the extent that findings of fact can be construed as conclusions of law, and vice versa, they are adopted as such.

1. In order to establish trademark infringement under the Lanham Act, Plaintiffs must demonstrate by a preponderance of the evidence that DDC uses a mark that is likely to confuse consumers as to the origin of the goods offered by the parties. AutoZone, Inc. v. Tandy Corp., 373 F.3d 786, 791 (6th Cir. 2004).

2. Plaintiffs own and have asserted against DDC the trademarks ANCESTRY, ANCESTRY.COM, and ANCESTRYDNA. Each are listed on the principal register of the Patent and Trademark Office. Doc. No. 8-3.

3. The trademark ANCESTRY was registered on January 16, 1990 for "periodical in the nature of a newsletter containing articles and information relating to genealogy, books relating to genealogy, and printed forms related to genealogy, namely, pedigree charts,

family group sheets, research calendars, research extracts, and census forms[.]" Doc. No. 8-3, at 2.

4. The trademark ANCESTRY.COM was registered on September 28, 2010 for "electronic databases in the field of genealogy." Doc. No. 8-3, at 3.

5. The trademark ANCESTRYDNA was registered on January 22, 2013 for "reporting services based upon the results of laboratory testing in the field of genetic and family history and genealogy" including "DNA testing services for non-medical use, namely DNA testing for investigating and learning about genealogical and family history[.]" Doc. No. 8-3, at 6.

6. DDC owns, by assignment, the trademark ANCESTRYBYDNA for "genomic test comprised of swabs used to collect test samples for analyzing DNA information for ancestry purposes[.]"[1] Doc. No. 8-5, at 2; Tr. (Doc. No. 45), at 216. ANCESTRYBYDNA was placed on the Principal Register on March 25, 2008. Id. ANCESTRYBYDNA is an "incontestable" trademark, i.e, the mark is conclusively valid and presumptively has achieved secondary meaning, making it a relatively strong mark. Doc. No. 29-10; Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center, 109 F.3d 275, 282 (6th Cir. 1997). DDC and/or its predecessor-in-interest has marketed DNA test kits using ANCESTRYBYDNA since at least 2002. Doc. No. 29-3; Silver Aff. (Doc. No. 29-2) ¶ 4.

---

[1] Plaintiffs dispute that DDC "owns" the ANCESTRYbyDNA trademark and states that it has filed a petition with the Patent & Trademark Office to cancel the registration due to alleged fraud. Plaintiffs ask the Court not to definitively rule that DDC "owns" the mark. As matters stand now, DDC's mark is registered and presumed valid. Whether the mark should be cancelled is not an issue presently before the Court. For purposes of the motion for a preliminary injunction, DDC owns the mark.

7. Prior to the registration of Plaintiffs' ANCESTRYDNA mark, DDC and/or its predecessor-in-interest has variously marked or marketed its DNA testing product and service as "ANCESTRYbyDNA," "ANCESTRY DNA Testing," "Ancestry DNA Test," "Ancestry Testing Services," and "Ancestry DNA Testing Services." Doc. No. 49-1; see also Doc. No. 8-5 (Trademark Principal Register for ANCESTRYBYDNA noting that first use of mark in commerce was November 2001).

8. Plaintiffs introduced their DNA testing kit to the market under the mark AncestryDNA in 2012. Tr. (Doc. No. 45, at 61); see also Doc. No. 8-3, at 6 (Trademark Principal Register for AncestryDNA noting that first use of mark in commerce was May 3, 2012).

9. Prior to Plaintiffs' introduction of their DNA test kit in 2012, a number of third parties used "Ancestry DNA Test," "DNA Ancestry Testing," and "DNA Ancestry Kit" to sell DNA testing kits. Doc. No. 29-22, Doc. No. 29-25. These third parties' use of "Ancestry" in close proximity to "DNA" substantially weakens the strength of Plaintiffs' AncestryDNA mark. Data Concepts, Inc. v. Digital Consulting, Inc., 150 F.3d 620, 625 (6th Cir. 1998) ("[A] mark is weakened outside of the context in which it is used if there is third-party use of the mark."), abrogated on other grounds, Hana Fin., Inc. v. Hana Bank, 135 S. Ct. 907 (2015).

10. Although registered, Plaintiffs' AncestryDNA mark for DNA test kits has descriptive elements to it because it denotes or describes a characteristic or ingredient of the article, i.e., a kit that uses DNA to determine the consumer's ancestry. Champions Golf Club, Inc. v. The Champions Golf Club, Inc., 78 F.3d 1111, 1117 (6th Cir. 1996); see also Zobmondo Entm't, LLC v. Falls Media, LLC, 602 F.3d 1108, 1115 (9th Cir. 2010)(stating that a trademark is descriptive if it takes no imagination or mental leap for the consumer to associate the mark with the product being offered).

4

11. As between DDC's ANCESTRYBYDNA mark and Plaintiff's ANCESTRYDNA mark, ANCESTRYBYDNA is the senior mark because DDC used its mark before Plaintiffs used ANCESTRYDNA. Consequently, DDC has the exclusive right to use ANCESTRYBYDNA to market DNA testing products. Allard Enterprises, Inc. v. Advanced Programming Resources, Inc., 146 F.3d 350, 358 (6th Cir. 1998)("[T]he exclusive right to a trademark belongs to one who first uses it in connection with specified goods."); Brookfield Comm'n, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1047 (9th Cir. 1999) ("The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion.").[2]

12. DDC's use of "Ancestry" and "DNA" in advertising its DNA testing kit is also descriptive of its product; consequently, DDC's use of these terms is protected under the "fair use" doctrine. Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 611-12 (6th Cir. 2009). This conclusion is buttressed by the fact that DDC used terms such as "ANCESTRY DNA Testing" and "Ancestry DNA Test" prior to Plaintiffs' use of ANCESTRYDNA to market its DNA test kit. Moreover, to the extent that confusion results from DDC's use of these terms,

---

[2] Plaintiffs claim that they offered a genetic DNA test kit as early as 2002 under the ANCESTRY mark and contend that ANCESTRY is therefore the senior mark for DNA test kits. Plaintiffs, however, did not challenge DDC's ANCESTRYbyDNA mark for genomic test kits within the statutorily required period. Therefore, DDC's use of this mark is presumptively valid. Moreover, testimony provided at the evidentiary hearing showed that Plaintiffs stopped selling their initial DNA kit in early 2003 and did not re-enter the DNA testing kit market until 2008. Tr. (Doc. No. 45) at 97-101. Therefore, to the extent that Plaintiffs had a trademark for DNA test kits that pre-dates ANCESTRYbyDNA, they arguably abandoned it with respect to DNA testing kits through non-use. Herb Reed Ent., LLC v. Florida Entm't Mmgt, Inc., 736 F.3d 1239, 1247 (9th Cir. 2013)(noting that three consecutive years of non-use is prima facie evidence of abandonment of mark).

that is a tolerable consequence of Plaintiffs' selection of a descriptive mark. KP Permanent Make-Up, Inc. v. Lasting Impressions I, Inc., 543 U.S. 111, 121-22 (2004).

13. Magistrate Judge Bowman rightly found that the record supports a finding of actual customer confusion between DDC's DNA test kit and Plaintiffs' DNA test kit. Plaintiffs introduced evidence that consumers purchased DDC's DNA test kit believing it to be their DNA test kit. However, this was more likely than not a case of "reverse confusion" caused by Plaintiffs' introduction of its junior ANCESTRYDNA mark to consumers rather than by DDC's use of its mark ANCESTRYBYDNA or by DDC's use of descriptive terms such as "ANCESTRY DNA Testing" and "ANCESTRY DNA Test." Surfvivor Media, Inc. v. Survivor Productions, 406 F.3d 625, 630 (9th Cir. 2005) ("[R]everse confusion occurs when consumers dealing with the senior mark holder believe that they are doing business with the junior one."). This conclusion is supported by the fact that Plaintiffs' witnesses acknowledged that there was no customer confusion between ANCESTRY, ANCESTRY.COM, and ANCESTRYBYDNA prior to Plaintiffs' introduction of its ANCESTRYDNA mark to consumers. Tr. (Doc. No. 45) at 101, 103-04, 145.

14. Although Plaintiffs have registered marks for ANCESTRY and ANCESTRY.COM, those marks are for fields unrelated to DNA testing kits. Tr. (Doc. No. 45) at 95.[3] Consequently, Plaintiffs' use of these marks to market, respectively, genealogy periodicals and genealogy websites, and DDC's use of its mark to market DNA test kits, is unlikely to result in

---

[3] Q. Now, on either of the Ancestry newsletters or this order form, you would agree with me that Ancestry back then, Ancestry.com back then wasn't selling under this "Ancestry" mark anything related to DNA testing; correct?

A. That is correct.

6

customer confusion. Daddy's Junky Music, 109 F.3d at 282 ("[I]f the goods or services are totally unrelated, confusion is unlikely.").

15. Plaintiffs' primary contention in this case seems to be that consumers associate both DDC's ANCESTRYBYDNA mark and their ANCESTRYDNA mark with their ANCESTRY mark and appear to want to piggyback their ANCESTRYDNA mark on the strength of the ANCESTRY mark.[4] Although it is true that Plaintiffs' use of the ANCESTRY mark predates DDC's use of ANCESTRYBYDNA, it is clear that a mark holder can "tack on" its first use of the mark to the date of an earlier mark only if the two marks are materially indistinguishable. Data Concepts, 150 F.3d at 623; Brookfield Comm'n, 174 F.3d at 1048. In this case, however, ANCESTRY and ANCESTRYDNA are not materially indistinguishable; the addition of "DNA" to "ANCESTRY" to form ANCESTRYDNA creates a different commercial impression than ANCESTRY. Cf. Data Concepts, 174 F.3d at 623-24 ("DCI" and "dci" were not legal equivalents for tacking purposes); Pro–Cuts v. Schilz–Price Enters., Inc., 27 USPQ2d 1224, 1993 WL 266611 (TTAB 1993) ("Pro-Kut" and "Pro-Cuts" were not legal equivalents). This conclusion is also supported by the fact that, as noted supra ¶ 13, there was no customer confusion between ANCESTRY and ANCESTRYBYDNA until Plaintiffs introduced ANCESTRYDNA to the market. Accordingly, to the extent Plaintiffs want to tack ANCESTRYDNA onto ANCESTRY to preclude DDC's use of ANCESTRYBYDNA, their argument is not supported by the case law or the current record. Hana Fin., 135 S. Ct. at 911, 912-13 (holding that tacking is generally a jury

---

[4] See Tr. (Doc. No. 45) at 136)("People who have seen the market for both Ancestry as a global brand as well as the AncestryDNA product are being confused by what is being sold on the AncestrybyDNA website.").

question, but a judge may resolve the issue on a motion for summary judgment or motion for judgment as a matter of law if the facts so warrant).

16. DDC may use ANCESTRYBYDNA as the trade name for its business. See Accuride Int'l, Inc. v. Accuride Corp., 871 F.2d 1531, 1534 (9th Cir. 1989) (noting that while trademarks and trade names are technically distinct, "trade names often function as trademarks"); see also 15 U.S.C. § 1115(a) ("Any registration issued under the Act of March 3, 1881, or the Act of February 20, 1905, or of a mark registered on the principal register provided by this chapter and owned by a party to an action shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration[.]") (emphasis added).

17. In summary, as between the parties, DDC has the senior mark for DNA test kits and, as Magistrate Judge Bowman found, is entitled to exclusive use of its mark in connection with selling its DNA test kits. Moreover, DDC's use of "Ancestry" and "DNA," and "Ancestry DNA" is descriptive and is allowable under the fair use doctrine. Herman Miller, Inc. v. Palazzetti Imp. & Exp., Inc., 270 F.3d 298, 319 (6th Cir. 2001). Additionally, DDC's use of these terms in connection with selling its DNA testing kit predates Plaintiffs' use of the AncestryDNA mark and is permissible for that reason as well. See Hewlett-Packard Co. v. Packard Press, Inc., 281 F.3d 1261, 1265 (Fed. Cir. 2002)(stating that the newcomer has the opportunity and obligation to avoid confusion with existing marks).

18. Plaintiffs' motion for a preliminary injunction is not well-taken and is **DENIED.**

**IT IS SO ORDERED**

Date April 25, 2016                    s/Sandra S. Beckwith
                                       Sandra S. Beckwith
                                       Senior United States District Judge